UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XILINX, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>GODO KAISHA IP BRIDGE 1,<br><br>   Defendant. | Case No. 3:17-cv-00509-JD<br><br>**ORDER RE SERVICE AND MOTION TO DISMISS RE SERVICE**<br><br>Re: Dkt. Nos. 21, 25 |

In this action for declaratory judgment of patent non-infringement, the parties are at loggerheads over service of the complaint on defendant Godo Kaisha IP Bridge 1 ("IPB"), a corporation located in Japan. Before resolving this dispute, the Court would like to express its concern to counsel about the unprofessional tone and content of some of the filings in the case, and in emails and other materials in the record. Counsel for both parties are advised that this District requires civility, courtesy and professional integrity from all attorneys admitted to practice here, at all times and in all filings and communications related to this case. Conduct below the District's standards will result in monetary or other sanctions, including attorney discipline and claim or defense preclusion. All counsel involved in this case for each party are directed to read the District's Guidelines for Professional Conduct located at https://www.cand.uscourts.gov/professional_conduct_guidelines and to advise their clients that the Court has ordered this measure.

With respect to the service dispute, IPB's contention that it is "simply" standing on its "right" to service under the Hague Convention is ill-taken. Dkt. No. 29 at 1. The salient and undisputed facts show that IPB has sued Xilinx in a federal court in Texas for patent infringement. Dkt. No. 24-7. That action was filed on February 1, 2017, and IPB's complaint and civil cover sheet list its principal address as "c/o Sakura Sogo Jimusho, 1-11 Kanda Jimbocho, Chiyoda-ku,

Tokyo 101-0051 Japan." Dkt. No. 24-7 (complaint); Dkt. No. 24-9 (cover sheet). IPB has sued other companies for patent infringement in other districts, and again represented that it is located at this principal address. *See, e.g.,* Dkt. Nos. 24-1, 24-3. This is the same address that Xilinx has used for its service efforts.

Attorney Michael W. Shore of the Shore Chan DePumpo LLP law firm is listed as IPB's "lead attorney" in the lawsuit against Xilinx in Texas. Dkt. No. 24-7 at 9. Xilinx alleges in the complaint, without challenge by IPB, that attorney Shore initially contacted Xilinx about IPB's infringement allegations and handled an extended period of pre-suit discussions about a deal to avoid litigation. Dkt. No. 1 ¶¶ 13-38. When the discussions broke down, Xilinx advised attorney Shore in an email that it had filed this declaratory judgment action and asked if he would accept service on behalf of IPB. Dkt. No. 23-3 at 6. Shore answered, "I suppose you never heard of the 'first to file' rule. We will serve Xilinx directly, and you can do the same with IPB. We will be well into the ED Tex case by the time your case is served." *Id*. Xilinx's lawyer followed up with "Thank you for your prompt response. I always appreciate your practice tips. In the meantime, to make sure I understood you, can you confirm that you are refusing to accept service on behalf of IP Bridge?" *Id*. at 5. Shore responded that "I can't educate somebody with a closed mind. I have no authority to accept service, and since you refused, we will serve Xilinx formally. If you need an answer by C.O.B., its 'No' and you can start the foreign service process. My client is asleep in Japan." *Id*. In another email sent shortly after that response, Shore said "I just read the Xilinx complaint. IPB will require formal service. IPB will move to dismiss on jurisdictional grounds. IPB will go into great detail outlining Xilinx (and your) grossly unprofessional conduct since the Xilinx complaint 'opened the door' with its out of context misleading email snippets. I appreciate you revealing yours and your client's true character over the last two weeks. It makes my job easy." *Id*. at 4.

This exchange is an effective illustration of the conduct that has generated the Court's concerns. It also shows that IPB's counsel declined to accept service in an apparent fit of pique, and the record of events after that indicates that IPB has been unduly difficult to serve in a manner reflecting the uncooperative spirit manifested in attorney Shore's words.

2

IPB's position that it has a "right" to force service through strict compliance with the Hague Convention misapprehends governing law. Under Federal Rules of Civil Procedure Rule 4(h)(2), a corporation in a foreign country may be served in any manner prescribed for an individual by Rule 4(f). Under Rule 4(f)(1), an individual may be served at a place outside a United States judicial district by an internationally agreed means of service such as the Hague Convention. Rule 4(f)(3) permits service "by other means not prohibited by international agreement, as the court orders."

When, as here, the issue to be addressed involves an interpretation of the Federal Rules of Civil Procedure, the law of the regional circuit applies even if the subject of the lawsuit is patent-related. *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003). In our circuit, Rule 4(f)(3) allows for service "by other means" so long as it is directed by the court and is not prohibited by international agreement. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). There is no hierarchy of procedures, as IPB suggests, that requires Xilinx to attempt service through the Hague Convention or other means before seeking an order under Rule 4(f)(3). *Id*. Service under Rule 4(f)(3) is not "a 'last resort'" or "'extraordinary relief.'" *Id*. at 1015. "It is merely one means among several which enables service of process on an international defendant." *Id*. Nor is it barred by a conflict with local law. "As long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Id*. at 1014.

This puts to rest all of IPB's substantive arguments against alternate service. IPB has been uncooperative at every turn in responding to Xilinx's attempts to serve the complaint. It has not shown that service under Rule 4(f)(3) would violate an international agreement, and the Hague Convention is certainly no bar. *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at *12 (N.D. Cal. July 1, 2011) ("numerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies").

Consequently, Xilinx's motion for an order of service under Rule 4(f)(3) is **GRANTED**. This order also resolves IPB's motion to dismiss with respect to service of the complaint, which is

**DENIED** on the same grounds. The other part of the motion to dismiss will be addressed in a subsequent order.

The only remaining question is the form of service to be ordered. In situations like this, service on a foreign corporation's counsel in the United States is an effective and reasonable method, and is not prohibited by the Hague Convention. *See, e.g., Richmond Techs.*, 2011 WL 2607158, at *13. Service of the complaint is ordered on IPB's counsel of record in this case and on attorney Shore. Xilinx should email the complaint to these lawyers and send a hard copy by registered mail through the United States Postal Service to their law offices.

The hearing on the remaining portion of the motion to dismiss is **VACATED** and the Court will resolve it on the papers. Civil Local Rule 7-1(b). The case management conference is on calendar for **May 18, 2017**.

**IT IS SO ORDERED.**

Dated: March 29, 2017

JAMES DONATO
United States District Judge